OPINION
The defendant-appellant, Kevin B. Yarbrough ("the appellant"), appeals the judgment of the Shelby County Court of Common Pleas dismissing his petition for postconviction relief brought pursuant to R.C. 2953.21. For the following reasons, we affirm the judgment of the trial court.
The pertinent facts and procedural history of the case are as follows. In January 1997, the appellant was tried before a jury on one count of aggravated murder, including death penalty specifications, and one count of conspiracy to commit aggravated murder. The aggravated murder charge included the following two death penalty specifications: (1) the offense was committed for hire, and (2) the victim was a witness to an offense who was purposely killed to prevent her from testifying in a criminal proceeding. See R.C. 2929.04(A)(2) and (8).
The appellant's indictment for aggravated murder and conspiracy to commit aggravated murder arose from the death of Wilma Arnett, a drug informant for the Shelby County Sheriff's Department. On the morning of May 10, 1994, Arnett's body was found face-down on a farm access road located in Shelby County, Ohio. An autopsy revealed that Arnett had been shot twice in the side of the face, once in the back of the head, once in the right breast, once in the right shoulder, and once in the lower back. There was also evidence of blunt force trauma to her head. According to the coroner's report, the apparent cause of death was the gunshot wounds to the head.
At the time of her death, Arnett was a key witness in the indictment of various individuals on drug related charges. Calvin Davis, now deceased, Jermaine Jelks, and Tyrone McGhee were just a few of the individuals under indictment at the time of Arnett's untimely death. According to the evidence introduced at the appellant's trial, Calvin Davis had long suspected that Arnett was the primary reason behind his indictment. Therefore, according to investigators, Davis hired the appellant to kill Arnett.
On February 23, 1996, the Shelby County Grand Jury indicted the appellant on one count of aggravated murder, including death penalty specifications, and one count of conspiracy to commit aggravated murder. In January 1997, the case against the appellant proceeded to trial in the Shelby County Court of Common Pleas. At the conclusion of the trial, the jury found the appellant guilty of one count of aggravated murder, including death penalty specifications, and one count of conspiracy to commit aggravated murder.
The case proceeded to the penalty phase of the trial. At the conclusion of the penalty phase of the appellant's trial, the jury recommended the sentence of death for the charge of aggravated murder. The trial court adopted the jury's recommendation of death. The trial court also ordered the appellant to serve a separate consecutive term of imprisonment of seven to twenty-five years for the charge of conspiracy to commit aggravated murder. From that decision, the appellant filed a direct appeal as of right to this Court.[1] On appeal, this Court affirmed in part and reversed in part the decision of the trial court. See State v. Yarbrough (Mar. 31, 1999), Shelby App. No. 17-97-03, unreported.[2] Specifically, we affirmed the appellant's conviction for aggravated murder, including death penalty specifications, and sentence of death. We reversed, however, the appellant's conviction and sentence for conspiracy to commit aggravated murder.
On December 2, 1999, the appellant filed a petition for postconviction relief pursuant to R.C. 2953.21. The appellant's petition listed the following twenty-one claims for relief: (1) Ineffective assistance of counsel based on trial counsel's failure to corroborate testimony of potential defense witness; (2) ineffective assistance of counsel based on trial counsel's failure to voir dire potential jurors on the topic of race; (3) ineffective assistance of counsel based on trial counsel's breach of loyalty to the appellant; (4), (5), and (6) ineffective assistance of counsel based on trial counsel's failure to confront, cross-examine, and impeach witnesses for the prosecution regarding their prior inconsistent statements to the police; (7) ineffective assistance of counsel based on trial counsel's failure to prepare and present adequate defense; (8) the prosecution failed to disclose to defense that witness for the prosecution had testified in exchange for sentence reduction on unrelated charges; (9) ineffective assistance of counsel based on trial counsel's failure to adequately investigate, prepare, and present mitigating evidence at mitigation phase of trial; (10) ineffective assistance of counsel based on trial counsel's failure to adequately prepare mitigation witnesses for trial; (11) ineffective assistance of counsel based on trial counsel's failure to adequately investigate the appellant's background for mitigating factors; (12) ineffective assistance of counsel based on trial counsel's failure to request appointment of a neuropsychologist to testify at mitigation phase of trial; (13) ineffective assistance of counsel based on trial counsel's failure to adequately utilize mitigation specialist in the investigation, preparation, and presentation of mitigating evidence; (14) ineffective assistance of counsel based on trial counsel's failure to adequately investigate, prepare, and present mitigating evidence regarding the appellant's character, history, background, and ability to adapt to confinement; (15) Ohio's post conviction relief process is unconstitutional because it fails to afford a person the right to discovery and an evidentiary hearing; (16) Ohio's death penalty scheme is unconstitutional because of its disparate treatment of minorities; (17) Ohio's death penalty scheme is unconstitutional because death by electrocution constitutes cruel and unusual punishment; (18) Ohio's death penalty scheme is unconstitutional because death by lethal injection constitutes cruel and unusual punishment; (19) the prosecution knowingly withheld exculpatory evidence from the defense (20) the prosecution knowingly proffered evidence it knew to be false; and (21) cumulative error.
On January 3, 2000, the State of Ohio filed a motion to dismiss the appellant's petition. By judgment entry of May 2, 2000, the trial court granted the State of Ohio's motion to dismiss, dismissing all of the appellant's claims without permitting discovery or an evidentiary hearing on any of his claims. From that decision, the appellant filed a timely notice of appeal with this Court and presents four assignments of error for our review.
For purposes of clarity and brevity, we will address the appellant's first, second, and third assignments of error simultaneously. These assignments of error are as follows:
 1. The trial court erred in granting appellee's motion to dismiss in violation of Rule Fifty-Six of the Ohio Rules of Civil Procedure and State v. Milanovich, 42 Ohio St.2d 46, 325 N.E.2d 540 (1975).[3]
 2. The trial court erred in dismissing appellant's claims on the basis of res judicata in violation of appellant's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.
 3. The trial court erred in dismissing appellant's post conviction petition, where he presented sufficient operative facts to merit an evidentiary hearing and discovery.
In his first, second, and third assignments of error, the appellant essentially sets forth three arguments. The appellant maintains that: (1) the trial court erred in denying him the opportunity to conduct or perform discovery, (2) the trial court erred in dismissing his petition without an evidentiary hearing, and (3) the trial court erred in rejecting numerous claims on the basis of res judicata.
Postconviction relief is governed by R.C. 2953.21. The postconviction relief statute provides a remedy for a collateral attack upon judgments of conviction claimed to be void or voidable under the United States or the Ohio Constitution. See R.C. 2953.21(A)(1); See, e.g., State v.Calhoun (1999), 86 Ohio St.3d 279, 281; Freeman v. Maxwell (1965),4 Ohio St.2d 4. To prevail on a postconviction relief petition, a petitioner must establish that he suffered an infringement or deprivation of his constitutional rights. See R.C. 2953.21(A)(1); See, e.g.,Calhoun.
The postconviction statute is not intended, however, to permit "a full blown retrial of the [petitioner's] case." State v. Robison (June 19, 1989), Pickaway App. No. 88 CA 15, unreported. Rather, "adjudication is confined solely to claimed constitutional violations." Id. "[C]laimed procedural or other errors at trial not involving constitutional rights are not relevant or subject to review." Id.; see, also, State v. Akers
(Feb. 2, 1998), Lawrence App. No. 97 CA 22, unreported.
The filing of a petition for postconviction relief does not automatically entitle the petitioner to an evidentiary hearing. See, e.g., Calhoun, 86 Ohio St.3d at 282 citing State v. Cole (1982),2 Ohio St.3d 112. The trial court first must determine whether substantive grounds for relief exists. R.C. 2953.21(C); Calhoun,86 Ohio St.3d at 282-283. Substantive grounds for relief exist and a hearing is warranted if the petitioner produces sufficient credible evidence to demonstrate that the petitioner suffered a violation of the petitioner's constitutional rights. Id.; State v. Jackson (1980), 64 Ohio St.2d 107,112, syllabus. Moreover, before a hearing is warranted, the petitioner must demonstrate that the claimed "errors resulted in prejudice."Calhoun, 86 Ohio St.3d at 283. The decision to grant the petitioner an evidentiary hearing is left to the sound discretion of the trial court. See Calhoun, 86 Ohio St.3d at 284 (stating that the postconviction relief "statute clearly calls for discretion in determining whether to grant a hearing").
In determining whether substantive grounds for relief exist, the trial court must examine the petition, any supporting affidavits, any documentary evidence, and all the files and records from the case. R.C.2953.21(C). In reviewing any supporting affidavits, the trial court need not accept the affidavits as true. Calhoun, 86 Ohio St.3d at 284. Rather, a trial court may assess the credibility of the affiant.
Moreover, a postconviction relief hearing is not warranted for claims that were raised or could have been raised on direct appeal. State v.Reynolds (1997), 79 Ohio St.3d 158, 161. The principle of res judicata
will operate as a bar to any claim that was raised or could have been raised on direct appeal. See, e.g., State v. Lentz (1994),70 Ohio St.3d 527; State v. Perry (1967), 10 Ohio St.2d 175, syllabus.
The following has been held with respect to the principle of resjudicata:
 Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at trial, which resulted in that judgment of conviction, or on an appeal from that judgment. Id. at paragraph nine of the syllabus.
In his petition for postconviction relief, the appellant sets forth twenty-one claims for relief. In each claim for relief, the appellant maintains that he suffered an infringement or deprivation of his constitutional rights. By judgment entry of May 2, 2000, the trial court found that thirteen of the appellant's twenty-one claims for postconviction relief were barred by the doctrine of res judicata. The trial court determined that the thirteen claims of ineffective assistance of counsel asserted in the appellant's petition could have been raised on direct appeal and were forever waived.
The Supreme Court of Ohio has specifically applied the doctrine of res judicata to postconviction proceedings alleging ineffective assistance of counsel. In State v. Cole (1982), 2 Ohio St.3d 112, the Court held, in pertinent part, as follows:
 Where defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence de hors the record, res judicata is a proper basis for dismissing defendant's petition for postconviction relief. (citations omitted.)
In the case herein, the appellant was represented by two different attorneys on appeal than at the trial level. Therefore, any claim of ineffective assistance of counsel which could fairly have been determined without resort to evidence de hors the record had to be brought on direct appeal or it was forever waived.
We have reviewed each of the appellant's thirteen ineffective assistance of counsel claims and make the following findings as to each.
In his first claim for relief, the appellant argues that he is entitled to an evidentiary hearing on the basis that trial counsel rendered ineffective assistance in neglecting to use as corroborating evidence an exculpatory statement made by Calvin Davis. During an interview with Jermaine Jelks, Detective Joanie Henry of the Shelby County Sheriff's Office informed Jelks that Davis had informed her that on morning of May 10, 1994, Tyrone McGhee, Jermaine Jelks, and Darren Taborn arrived at his home and were covered in blood.
In his petition for postconviction relief, the appellant asserts that Calvin Davis' statement should have been used by trial counsel to corroborate the statement of another potential defense witness, Kenneth Henderson. According to Henderson, Calvin Davis had told him that on the morning of May 10, 1994, Tyrone McGhee, Jermaine Jelks, and Darren Taborn had come to his home to clean blood off of themselves. The trial court did not allow Kenneth Henderson to testify at trial because he did not show corroborating circumstances clearly indicating the trustworthiness of the statement. In support of his position, the appellant attached to his petition the transcript of the police interview with Jermaine Jelks.
In his petition for postconviction relief, the appellant acknowledges that the transcript of the police interview was made available to trial counsel prior to trial. Because this claim was clearly evident and of record at the time of the direct appeal, we find it was forever waived and that the appellant's claim is barred by the doctrine of resjudicata. Therefore, the trial court did not err is dismissing the appellant's first ineffective assistance claim without an evidentiary hearing.
In his second claim for relief, the appellant alleges that he is entitled to an evidentiary hearing on the basis that trial counsel rendered ineffective assistance of counsel during voir dire of potential jurors. The appellant asserts that trial counsel should have questioned the prospective jurors on the issue of race.
A review of the transcript of the voir dire proceedings reveals that trial counsel did in fact question the prospective jurors on the issue of race. Furthermore, this argument clearly could have been raised by the appellant on direct appeal. Therefore, the doctrine of res judicata
precludes him from raising this argument in his petition for postconviction relief. For the foregoing reasons, the trial court did not err in dismissing the appellant's second ineffective assistance claim without an evidentiary hearing.
In his third claim for relief, the appellant initially alleges that he is entitled to an evidentiary hearing on the basis that trial counsel rendered ineffective assistance of counsel by breaching the duty of loyalty between attorney and client. In support of his position, the appellant attached to his petition the affidavit of Melissa Kimbrough, an attorney and mitigation specialist.
Prior to trial, defense counsel consulted Melissa Kimbrough for her advice and guidance on the mitigation phase of the appellant's trial. According to Kimbrough's affidavit, after the close of the defendant's trial, trial counsel stated to her that "he knew black people he liked, but that Kevin was a nigger." The appellant now asserts that he was prejudiced by trial counsel's remark.
We agree with the appellant that such a remark, if made, is grossly inappropriate, offensive, and distasteful. Nonetheless, having conducted a review of the record, we cannot say that trial counsel rendered ineffective assistance of counsel. There is no evidence in the record to support such a conclusion. Because the alleged remark, if made, did not prejudice the outcome of the appellant's trial, we find no merit to the appellant's argument.
Melissa Kimbrough also alleged in her affidavit that trial counsel did not follow her suggestions or advice during the penalty phase of the trial. It is well-settled, however, that debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45, 49. Therefore, we find no merit to the appellant's argument. For all of the foregoing reasons, the trial court did not err in dismissing the appellant's third ineffective assistance claim without an evidentiary hearing.
In his fourth, fifth, and sixth claims for relief, the appellant asserts that he is entitled to an evidentiary hearing on the basis that trial counsel rendered ineffective assistance of counsel in failing to properly confront, cross-examine, and impeach three witnesses for the prosecution. The appellant maintains that the testimony of Jermaine Jelks, Annette Simmons, and Jewel Davis was inconsistent with previous statements they had given to the police. The appellant asserts that the witnesses should have been properly cross-examined at trial regarding their prior inconsistent statements. In support of these claims, the appellant attached to the petition the transcripts of the police interviews conducted with each of the witnesses.
As to the charge that trial counsel's cross-examination of these witnesses was substandard, we note that an appellate court reviewing an ineffective assistance of counsel claim will not second-guess counsel's strategy in direct and cross-examination of witnesses. State v. Gray
(Mar. 28, 2000), Franklin App. No. 99AP-666, unreported, citing State v.Edwards (Feb. 17, 1998), Clermont App. No. CA97-04-035, unreported. Furthermore, as we previously stated, debatable tactical decisions generally do not constitute a deprivation of effective counsel. Statev. Philips (1995), 74 Ohio St.3d 72, 85.
Moreover, we find that said issues could fairly have been determined without resort to evidence de hors the record. Because the claims were clearly evident and of record at the time of the direct appeal, we find they were forever waived and that the appellant's claims are barred by the doctrine of res judicata. For all the foregoing reasons, the trial court did not err in dismissing the appellant's fourth, fifth, and sixth ineffective assistance claims without an evidentiary hearing.
In his seventh claim for relief, the appellant asserts that trial counsel rendered ineffective assistance of counsel in failing to prepare and present an adequate defense. In his petition, the appellant argues that he should be afforded the opportunity to conduct or perform discovery to determine whether an evidentiary hearing is warranted on his claim. In essence, the appellant wishes to embark on a fishing expedition for exculpatory evidence. Petitions for post-conviction relief are available to defendants to rectify errors in prior proceedings and to effectuate justice. They are not available to be used as fishing expeditions. See, e.g., State v. Durr (Aug. 25, 1994), Cuyahoga App. No. 65958, unreported. Therefore, the trial court did not err is dismissing the appellant's seventh ineffective assistance claim without allowing the opportunity for discovery.
In his ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth claims for relief, the appellant asserts that trial counsel rendered ineffective assistance of counsel during the mitigation phase of the trial.[4] The appellant maintains that trial counsel did not adequately prepare and present sufficient evidence of mitigation. The appellant points to evidence regarding his family history, personal background, expert testimony, and the failure to adequately utilize and call certain witnesses in support of his claims of ineffective assistance of counsel. In support of his claims, the appellant attached to his petition numerous documents as well as the affidavits of family members and expert witnesses.
A review of the record in this case reveals that trial counsel performed an adequate investigation of the appellant's personal background and through a court appointed psychologist presented evidence of the appellant's psychological state and mental capacity. The court appointed psychologist met with the appellant on four separate occasions, reviewed records and other information concerning the appellant, and spoke with members of the appellant's immediate family. The testifying psychologist also conducted a clinical interview and performed numerous tests on the appellant in order to gain basic information and personal knowledge about the appellant's mental condition.
Trial counsel also met with members of the appellant's immediate family. The appellant's sister, brother, and aunt testified about the appellant's family history and the appellant's general character during the mitigation phase of the trial. The foregoing evidence demonstrates that it was within the purview of trial counsel to determine whether additional expert testimony or other information regarding the appellant's personal and family background was cumulative in nature. Therefore, we find these arguments unpersuasive.
The remainder of the appellant's claims of ineffective assistance of counsel which had allegedly occurred during the mitigation phase of the appellant's trial involve trial tactics and strategy. As we have repeatedly held, debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. Clayton,62 Ohio St.2d at 49. Furthermore, an attorney's selection of witnesses to call at trial falls within the purview of trial tactics and generally will not constitute ineffective assistance of counsel. See, e.g., State v.Coulter (1992), 75 Ohio App.3d 219. This Court will not second-guess every aspect of the defense attorney's presentation of the mitigation evidence at the penalty phase of the appellant's trial. It is well-settled that the existence of alternative or additional mitigation theories does not establish ineffective assistance of counsel. State v.Combs (1994), 100 Ohio App.3d 90, 105.
The appellant also alleges in his fourteenth claim for relief that trial counsel's performance was deficient in failing to investigate and to present evidence of the appellant's ability to adapt to confinement. In support of his claim, the appellant attached prison records and other documents to his petition for postconviction relief. Because the appellant was incarcerated prior to and during his trial, this claim was clearly evident and of record at the time of the direct appeal. Therefore, we find that the appellant's claim was forever waived and the issue is barred by the doctrine of res judicata.
For all of the foregoing reasons, we find that the trial court did not err in dismissing the appellant's ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth claims of ineffective assistance of counsel.
In his eighth claim for relief, the appellant asserts that he is entitled to a new trial or, at a minimum, that he be allowed the opportunity for discovery and an evidentiary hearing on the basis that the prosecution withheld exculpatory evidence at trial. The appellant maintains that the prosecution should have disclosed to defense counsel that Vance Short, a witness for the prosecution, was given a deal in exchange for his testimony. In support of his claim, the appellant attached to his petition a letter Vance Short had written to an attorney in which he claims that his cooperation with the prosecution is grounds for a possible sentence reduction.[5]
The law of this state requires a prosecuting attorney, upon motion of the defendant before trial, to disclose to the defendant all known evidence "favorable to the defendant and material to either guilt or punishment." Crim.R. 16(B)(1)(f). When the prosecution withholds material, exculpatory evidence in a criminal proceeding, it violates the defendant's due process right to a fair trial under theFourteenth Amendment. "[T]he suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution." Brady v. Maryland (1963), 373 U.S. 83, 87; see, also, Statev. Johnston (1988), 39 Ohio St.3d 48, paragraph four of the syllabus. When the "reliability of a given witness may well be determinative of guilt or innocence," nondisclosure of evidence affecting credibility falls within this general rule. Giglio v. United States (1972),405 U.S. 150, 154, citing Napue v. Illinois (1959), 360 U.S. 264, 269.
In determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. This standard of materiality applies regardless of whether the evidence is specifically, generally, or not at all requested by the defense. Johnston, 39 Ohio St.3d at paragraph five of the syllabus, following United States v. Bagley (1984), 473 U.S. 667; see, also, Kyles v. Whitley (1995), 514 U.S. 419.
Here, the appellant relies heavily on the written letter to bolster his position that there had been a sentence reduction deal which was known in advance of trial and should have been disclosed to the defense. There is nothing in the letter, however, which suggests that a reduction in sentence was promised in exchange for his testimony. While it is certainly possible that Vance Short may have inquired as to the possibility of reducing his sentence before he testified at the appellant's trial, nothing in the record supports that anything definitive was promised that required disclosure. For these reasons, the trial court did not err in dismissing the appellant's eighth ineffective assistance claim without an evidentiary hearing.
In his sixteenth claim for relief, appellant alleges that he should have been granted a new sentencing hearing or, in the alternative, the opportunity for discovery and an evidentiary hearing on his claim that the death penalty is disproportionately meted out against African Americans in Shelby County, Ohio, and the State of Ohio, in violation of the United States and Ohio Constitutions. In support of this claim, the appellant attached to his petition record and statistics compiled by the Ohio Public Defender's Office of the people on death row and a copy of the 1990 Census.
Statistics indicative of a disparate impact alone are insufficient to establish a claim of discriminatory enforcement of the death penalty. The minority defendant must show that the decision makers in his case acted with discriminatory purpose. State v. Loza (Oct. 13, 1997), Butler App. No. CA96-10-214, unreported, following McCleskey v. Kemp (1987),481 U.S. 279, 297.
Here, the appellant has failed to present any evidence of intentional racial discrimination in his trial. Therefore, the appellant's sixteenth claim for relief lacks merit and was properly dismissed without granting him a new sentencing hearing or, in the alternative, the opportunity for discovery and an evidentiary hearing.
In his seventeenth and eighteenth claims for relief, the appellant alleges that he should have been granted the opportunity for discovery and an evidentiary hearing on his claims that the use of electrocution and lethal injection as methods of execution violate the Fifth, Sixth,Eighth, and Fourteenth Amendments of the United States Constitution. The appellant argues that death by electrocution or lethal injection is a form of cruel and unusual punishment. In support of his claim, the appellant attached to his petition various reports and statistics.
R.C. 2949.22 states, in pertinent part, as follows:
 (B)(1) Any person sentenced to death may elect to be executed by lethal injection instead of by electrocution as described in division (A) of this section.
* * *
 (D) If a death sentence is required to be executed by lethal injection because the person sentenced to death elected to be executed by lethal injection pursuant to division (B)(1) of this section and if the execution of a death sentence by lethal injection is determined to be unconstitutional, the death sentence shall be executed by causing a current of electricity, of sufficient intensity to cause death, to pass through the body of the person upon whom the sentence was imposed.
The Ohio Supreme Court has held that death by electrocution does not violate the constitutional prohibition against cruel and unusual punishment. See, e.g. State v. Bayless (1976), 48 Ohio St.2d 73. The appellant may choose to be put to death by lethal injection, but he need not for it is merely an option available to him. If he prefers, he can elect to be executed by electrocution. Thus, the issue of whether death by lethal injection is cruel and unusual punishment is moot. For the foregoing reasons, the trial court did not err in dismissing the appellant's seventeenth and eighteenth claims for relief without affording him the opportunity for discovery and an evidentiary hearing.
In his nineteenth and twentieth claims for relief, the appellant asserts that he should have been granted an evidentiary hearing on his claim that the prosecution withheld exculpatory evidence and presented false evidence at the appellant's trial. The appellant maintains that (1) the prosecution knowingly allowed a witness, Jermaine Jelks, to testify falsely and (2) the prosecution withheld an exculpatory statement made by Orlande Clark.
The foregoing arguments relate to the testimony of Jermaine Jelks. Jermaine Jelks testified at the appellant's trial that he was told by James Bussey during a jailhouse conversation that "we killed her." According to Jelks, Bussey was referring in part to the appellant. However, according to Orlande Clark, who was also allegedly present during the conversation, James Bussey did not implicate himself in the murder.
The appellant now contends that the prosecutor knowingly allowed Jermaine Jelks to testify falsely and, further, that the prosecution withheld Orlande Clark's statement from the defense. First, we note that the only written record of the appellant's version of events is the affidavit of James Bussey's former counsel of record. Second, the appellant attempts to hold the prosecution responsible merely because separate witnesses have conflicting versions of the events in question. This is not the law in the State of Ohio. Inconsistencies separate from suborned perjury simply go to the weight of the evidence. See State v.Shedwick (Nov. 20, 1997), Cuyahoga App. No. 71749, unreported.
Having reviewed the record herein, we no merit to the appellant's argument that the prosecution withheld evidence from the defense, nor has the appellant asserted a viable claim that the prosecution allowed Jermaine Jelks to testify falsely. Therefore, the appellant's nineteenth and twentieth claims for relief lack sufficient merit and were properly dismissed without an evidentiary hearing.
Accordingly, the appellant's first, second, and third assignments of error are not well-taken and are overruled.
 4. Ohio's post conviction procedures neither afford an adequate corrective process nor comply with due process or equal protection under the Fourteenth Amendment.
In his fourth and final assignment of error, and specifically his fifteenth claim for relief, the appellant maintains that he should have been granted the opportunity for discovery and an evidentiary hearing on the basis that R.C. 2953.21, Ohio's post conviction relief process, is unconstitutional. The appellant maintains that Ohio's post conviction relief process violates a person's rights to equal protection and due process of law guaranteed under the United States Constitution because it fails to afford the petitioner the power to conduct or perform discovery to determine whether an evidentiary hearing is warranted.
Initially, we note that legislative enactments enjoy a strong presumption of constitutionality. See, e.g., State v. Cook (1998),83 Ohio St.3d 404, 409. The Ohio Supreme Court stated as follows, with respect to the constitutionality of a statute:
 `An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' State ex rel. Dickman v. Defenbacher (1955), 164 Ohio St. 142, 128 N.E.2d 59, paragraph one of the syllabus. `A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality.' Id. at 147, 128 N.E.2d at 63. `That presumption of validity of such legislative enactment cannot be overcome unless it appear[s] that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution.' Xenia v. Schmidt (1920), 101 Ohio St. 437, 130 N.E. 24, paragraph two of the syllabus; State ex rel. Durbin v. Smith (1921), 102 Ohio St. 591, 600, 133 N.E. 457, 460; Dickman, 164 Ohio St. at 147, 128 N.E.2d at 63.
Id. All doubts regarding the validity of a statute "are to be resolved in favor of the statute." State v. Gill (1992), 63 Ohio St.3d 53, 55. The party seeking to have the statute declared unconstitutional bears the burden of proving beyond a reasonable doubt that the statute and a constitutional provision are incompatible. State v. Warner (1990),55 Ohio St.3d 31.
Here, the appellant argues that Ohio's postconviction relief process, or R.C. 2953.21, is unconstitutional because it fails to afford the petitioner the power to conduct or perform discovery to determine whether an evidentiary hearing is warranted. We do not agree. The right to file a postconviction relief petition is a statutory right, not a constitutional right. In fact, postconviction state collateral review itself is not a constitutional right, even in capital cases. State v.Steffen (1994), 70 Ohio St.3d 399 (citations omitted). More recently, the Ohio Supreme Court has explained:
 State collateral review is not itself a constitutional right. * * * Further, a postconviction proceeding is not an appeal of a criminal conviction but, rather, a collateral civil attack on the judgment. * * * Therefore, a petitioner receives no more rights than those granted by the statute.
State v. Calhoun (1999), 86 Ohio St.3d 279, 281.
We cannot say that the failure to afford a postconviction relief petitioner discovery during the initial proceeding to determine whether an evidentiary hearing is warranted renders the postconviction relief process unconstitutional. Ohio case law has affirmatively established that the lack of discovery during the initial stages of the postconviction process does not violate any constitutional rights of the postconviction relief petitioner. At least one Ohio appellate court has held that the failure to afford a postconviction relief petitioner discovery during the initial proceeding to determine whether an evidentiary hearing is warranted does not render the postconviction relief process unconstitutional. See State v. La Mar (Mar. 17, 2000), Lawrence App. No. 98 CA 23, unreported (holding that lack of discovery during the initial stages of the postconviction process is based upon sound logic and does not violate any constitutional rights of the petitioner). We agree and likewise find that the failure to afford a postconviction relief petitioner discovery during the initial proceeding to determine whether an evidentiary hearing is warranted does not render the postconviction relief process unconstitutional. Therefore, we find no merit to the appellant's fifteen claim for relief.
Accordingly, the appellant's fourth and final assignment of error is not well-taken and is overruled.
In his twenty-first and final claim for relief, the appellant argues that he is entitled to a new trial or, at a minimum, the opportunity for discovery and an evidentiary hearing on the basis that the cumulative effect of the errors alleged in his petition for postconviction relief render his conviction and death sentence unreliable and constitutionally infirm. In State v. Garner (1995), 74 Ohio St.3d 49, 64, the Ohio Supreme Court stated as follows with respect to the doctrine of cumulative error:
 Pursuant to this doctrine, a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal.
 In the case herein, the doctrine of cumulative error is not applicable as we have found no merit to the appellant's twenty-one claims of trial court error. Therefore, the trial court properly denied the appellant's twenty-first and final claim for relief.
In conclusion, because the appellant has failed to produce sufficient, credible evidence demonstrating that he has suffered an infringement or deprivation of his constitutional rights, substantive grounds for relief do not exist. Therefore, the appellant is not entitled to an evidentiary hearing on his claims for relief and the trial court properly dismissed his petition for postconviction relief.
Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
 __________________ HADLEY, J.
 WALTERS and SHAW, JJ., concur.
[1] We note that the courts of appeal in Ohio no longer have jurisdiction to decide a direct appeal of any case in which the death penalty is imposed. See Sections 2(B)(2)(c) and 3(B)(2), Article IV, Ohio Constitution.
[2] The case is now pending on appeal before the Supreme Court of Ohio.
[3] We note that the appellee did not file a motion for summary judgment. The record shows that by judgment entry of May 2, 2000, the trial court granted the appellee's motion to dismiss, thereby dismissing the appellant's petition for postconviction relief. The trial court made no references to a motion for summary judgment.
[4] In his ninth, tenth, and twelfth claims for relief, the defendant contends that he is entitled to a new trial or, at a minimum, the opportunity for discovery and an evidentiary hearing. In his eleventh, thirteenth, and fourteenth claims for relief, the defendant contends that he is entitled to a new sentencing hearing or, at a minimum, the opportunity for discovery and an evidentiary hearing.
[5] Vance Short testified at trial that while incarcerated in the Shelby County jail with the appellant, the appellant told him that "I made sure the bitch got what she deserved."